Council, you may proceed. Thank you. Victor Sherman for the appellant. Thank you for allowing me to argue this morning. In 1996 the sum of approximately one and a half million dollars was deposited into a bank in the United States and then transferred to Switzerland. That money was the result of presumably to avoid certain assessments by the government. The defendant was tried in the year 2002 and convicted of various crimes in the United States District Court. After the conviction of the defendant, the government levied an assessment against this one and a half, one million, one hundred and fifty thousand dollars and assessed a tax for which the defendant paid of approximately eight hundred and fifty thousand dollars. So the first contention is that this money that was deposited in the Swiss bank account was already taxed and the appellant. And what evidence is there in the record that that is the case, counsel? That she paid the tax? Oh no, that it's the same money. Okay. Everything in this case, your honor, up to the time that the court granted the motion for summary judgment was based upon the fact that neither side disputed that the money that was deposited in Switzerland was in fact the same money that was in account 3235. Nobody even raised that argument prior to the judge granting the If you're making a claim based upon that being the case, isn't it your burden to show that that is in fact the case? Your honor, the government is the one that was able to presume, presumably pursuant to the treaty, to get the bank records to show where the money came from in Switzerland. They got the records to show that, and they had the records from 1998 onward when they started investigating the criminal case, that this money was deposited in Switzerland. They had the Your position is that you have no burden to show that it's the same money? No. We would have produced, if we would have had a trial, we would have put on evidence that in fact it was the same money. The judge never gave us the opportunity to have a trial on that issue. The district court, counsel, made a factual finding that the money, that she didn't carry her burden, essentially, of showing that the money was derived from a lawful source. Is there any evidence in the record showing that the money was derived from an illicit source? It depends on whether or not it was the same money. The government conceded that early on, that 1.1 million dollars came from her medical, from her medical practice. That's, there's lots of evidence in the record that that money was legitimate money. But what the judge did in this case on the motion for summary judgment, he came up with the conclusion that they were separate accounts, but there was no evidence either way, either from the government or the defense, because it was come to that conclusion on the basis of a summary judgment motion. We made a motion for reconsideration after that and said, Judge, we didn't understand that you were going to make the conclusion that it was, that it was not the same money, that both sides had, had litigated this case on the same, on the theory that it was the same money. All of a sudden, you're saying there was no evidence in the record that it was the same money. Give us an opportunity now to make a showing that it was the same money, and I would have been able to present lots of clients to say that was the only money she ever deposited. In addition, the, Your Honor, they had been... Did you make that proffer? In the motion for reconsideration? Yeah, saying that you put the client on and... We didn't go into, we didn't go into specific... We made a motion for reconsideration on the basis that we could prove. I didn't go into specific details about how we could prove it. But you didn't say to the judge, you know, if you let, if you let us go we didn't go into those details. We went into the details that this was a complete surprise to us that you were making that conclusion. And I have, in fact, in front of me the motion for consideration in which we made the contention that, in fact, it was the same money and that government had not put any evidence that it wasn't the same money. So... This is a slightly different issue, but as I understand it, you're claiming that under the convention between the United States and the Swiss Confederation that there is a private right of action to get some information. Where, from what source does that private right of action come? Well, it's in the treaty itself and we quoted it at pages 14 and 15 of our... What paragraph? This is at page 14 of a reply brief. Okay, I'm asking when the treaty, where, what, what provision of the treaty expressly spells out the right to a private right of action? I think it's the 2009 Protocol Article 4E. And then 2009 Protocol... But I thought you were appealing under the January 1, 1998 convention. That's a different convention, is it not? Well, I'm not sure if that makes any sense. But you said that's 2009. That's substantially after the 1998 convention, is it not? Well, obviously 2009 is after 1998, but... I think that's right. Clearly. But the point of the matter is that the treaty was, there was a protocol that gave the person a private right to object and that they could go through arbitration. And also the, under the treaty, they're required to transfer the documentation so that the person can object to that. And none of that was done in this case. And under the protocol, she was considered a concerned person. So what we're saying, first of all, we're saying that under that treaty, that's only for income tax purposes and the F-bar is not a tax case. Right. So that we're also making that argument. But... You're making the argument against yourself? You mean that the protocol doesn't help you because that's income tax and this is F-bar and not income tax? No, that's not what I'm saying. What I'm saying is that the government used this treaty, which is supposed to be a tax treaty between the United States and Switzerland. That the Swiss government is entitled to give information to the United States government for tax purposes. But they used it to get information for an F-bar violation, which is not a tax event. That's what I'm saying. Okay. So that the What... The district judge determined that there was no material issue of fact. He didn't really seem to contest any of the facts there. Why was the district court wrong? What material facts were there that you disputed? The material fact that the main material fact that we just disputed was the fact that the was established in 2006. It was the same money. And under all of our defenses, including that there was an excessive fine, was based upon those funds being the same funds. But the judge never gave us an opportunity to prove that. And it was never litigated, that specific question. Their whole complaint in this case was on the assumption that it was the same money. Nobody ever said anything differently. And then when he made his motion for summary judgment, granted the government, by the way, never argued in this motion for summary judgment that it was separate money. They never even made that argument. He came up with that in his conclusion, in his granting the motion for summary judgment. And that's the first time it was even brought to anybody's attention on either side that he was considering it separate accounts. And then we made the motion for reconsideration saying, no judge, that's not the facts. The government never proved what happened to the money in 1996 when it was originally deposited there. They had all the records. The records never showed what happened to those funds. There was no records that the government produced to show where the money came from when the money was deposited, you know, in 1997, which led to the assessment in 2006. And now all of a sudden you're telling us it's not the same money? We were never given notice of that fact. We never even thought that was an issue. And the government never thought that was an issue. Now they're dumping on the bandwagon because obviously it helps them. But that's not what the argument they made before. And the moment we got that decision and we said, wait a minute, give us an opportunity to prove that it is the same money. That's all we're asking for. But you've already said that you made no proper technical sense that you said to the judge, if you give us this chance to have a reconsideration, my client will say X, Y, and Z, and this is something else, and this is something else. You didn't do that, right? Well, first of all, I said give us the motion for reconsideration basically brought up the idea that the money were not different funds. It was the same money. I get that. That's your main point. But I'm saying you, of course, have the burden to show where the money came from. And it sounds like you didn't give the court anything it could work with to, you know, address your problem. Well, first of all, we had to get the motion granted for reconsideration so we could present that issue to the court. Do you proffer any of that in your appeal? I didn't see it. I'm sorry? Did you proffer, make a proffer in your appeal of what you would be able to show? That I put in specifically? Yes. I didn't put in specifically in the in the appeal that we could show exactly. In fact, what we're saying is the records are so old that we don't have the records to be able to actually show by way of the money came from. What I'm saying, what I did say in the appeal is if you give us an opportunity to go back in front of the district court and the trial court, we could show where the money came from. So your client admitted to willfully violating, is that correct? She did not admit to willfully. She agreed that you would not argue against willfulness. I'm trying to understand the difference. It seems like from what I read that she admitted willful violations, but she's raising these affirmative defenses, a number of them. I mean, you've raised a number of them, and you have the burden to establish these affirmative defenses, and in fact, you know, create a question of material fact. It looks like the district court judge didn't find that you had met your burden. Okay, well, the district court said, for instance, on the question of one of the affirmative defenses, that whether or not he would make a difference under the Bajakian case, whether or not there was an excessive fine in this case, as to whether or not the funds were lawful or not. He never gave us an opportunity to prove that the funds were lawful, because he came to the conclusion, he made that decision without giving us an opportunity to prove where the money came from. I guess, show me in the record where you asked for that opportunity, where you put on the record, judge, you know, I object or take issue with that because we can prove the following. I didn't see it. Where in the record did you put that? Your Honor, it never came up before he granted the motion for summary judgment. When you're asking . . . But even in your motion for reconsideration, you don't make a proffer. So let me ask you, what's the best case, you know, supporting . . . Your Honor, that's not true. I've got the motion for reconsideration right in front of me at page 2, and I'm quoting, rather she believes that she has been given notice of the funds, defendant would have presented evidence that the funds in the subject account derived from the same funds deposited in 1996, thereby allowing the court to come to a different conclusion. I say it right in my motion for reconsideration at page 2, that given an opportunity, we would have presented evidence that the What would the evidence have been? Can you tell me now what the evidence would have been? Well, the main evidence would have been two, Your Honor. First of all, the only funds that were ever deposited in the Swiss account came from her business practice, and we would have presented evidence that all the money that was earned from her business practice stayed in the United States. There was no withdrawals from any of her business accounts to show deposits into Switzerland. That would have been one thing we would have proven. Second, we would have proved that the IRS investigated this case, went through all of her records, and could find no evidence that any money ever left the United States other than that 1.1 million dollars to begin with, and then we would put on the defendant, the appellant in this case, who would have testified that I never took money from the United States after this original deposit and sent it to Switzerland. So we would have had three ways to prove that. But you didn't put that down. Well, I said specifically . . . To give an opportunity, I know. So what else was I supposed to do? Well, say what you just told me would have been helpful, I think, to your case. It might have been helpful to put those things into the record, but all I'm asking for on a motion for reconsideration, Judge, give us an opportunity to do that, and we would have shown that the money came from a legitimate source. Before your time runs out, what's your best case regarding the or violates the excessive fines clause? The two best arguments, Your Honor, is number one, she'd already been taxed on that money and paid $807,000 in taxes. So this was basically double taxation. And the second argument is that under the excessive fine analysis, this was legitimate money. It wasn't terrorism money. It wasn't drug money. What's your best case? What do you mean by best case? Authority. A case . . . The Bajakian case, which goes through the five factors. And we talk about exactly, you know, those five factors. And one of the things they emphasize is, is it terrorism money? Is it drug money? Things of that nature. Well, aren't you back to the same problem? You didn't make a proffer. And in this particular case, the judge actually was concerned enough about the Eighth Amendment excessive fines issue that he unilaterally reduced the fine. No, not really. All he did is . . . Did he lower the amount of money due? Only because what he decided was that he was . . . the government was only entitled to 50% of the money as the balance that existed at the end of the year, December 31, 2006. And the government based its 50% analysis on what was the money in the account in June of 2007. So he said, statutorily, the government can't do that. So he mouthed the idea that he went through the analysis. But in fact, it came to a figure that was 50% of the balance at the end of the year. So he really didn't do that. Okay. And that's exactly what the government says. Counselor, with respect, your time is up. Thank you for that argument. We'll hear from the government. Good morning. Good morning. May it please the Court, Deborah Snyder for the United States of America. The district court correctly imposed a penalty against Bussell in this case. Counsel, with regard to the excessive fines issue, I've got two big problems with the district court's analysis. And I want you to help me on each of those issues today. The first one is that the district court said that Bussell did not carry her burden to show that the money at issue was not derived from an illicit source. And he cited one of our cases, police. As I read police, the burden is on the government to show that the money was derived from an illegal source. And as my colleagues have discussed extensively with Mr. Sherman, there doesn't seem to be a whole lot of evidence going one way or the other. In other words, I couldn't find in the evidence any evidence that shows the money was not derived from her work as a legitimate doctor and from her business. And I can explain why that is. Can you address the burden issue first and then tell me if there's evidence in the record that I'm The burden is on Bussell for two reasons. First, because it's an affirmative defense and she bears the burden of proving her affirmative defense. And second, because the party making the contention that a penalty violates the Eighth Amendment bears the burden of proving its excessiveness. So the burden is on her. And as far as the allegation regarding the source of the funds, that doesn't matter for three reasons. First, the FBAR penalty statute does not depend on the source of the funds. The penalty is based on the balance in the account and it doesn't matter for purposes of that penalty where the funds came from. Under FBAR, the funds can be totally clean and if they're not reported, the FBAR penalties can still apply. Sure. Right. Yes. But is the fact that funds may be from an illicit source a mitigating factor? Or that it's not from an illicit source a mitigating factor to be considered by the agency in proposing a particular fine? Well, it doesn't matter under the statute and the district court decided what was before it. You know, the problem here is a problem of Bussell's own making because her argument, there's no evidence as to the source of these funds at all. There's no evidence. And her argument in the district court was that the account was the same, not that the funds were the same, that the account was the same account that was involved in her prior civil and criminal proceedings. The district court ruling on what was before it said, no, it's not the same account. The timing doesn't work out at all. And then on reconsideration, she changed her position to say, well, okay, I admit it wasn't the same account, but it was the same funds. And the bottom line is that there was no evidence that it was either the same account or the same funds, but it's irrelevant under the statute in any event. And the reason that situation exists is because it was Bussell's strategy. Her strategy was to stipulate to the elements of the government's claim in order to cut off all discovery, including the deposition subpoena for her son, who transferred the balance of this account to two other offshore accounts shortly after she filed her tax return. So she stipulated to cut off discovery. She didn't serve any discovery. She didn't request any records. And then she moved for judgment on the pleadings, asking for a ruling in her favor as a matter of law. So the district court ruled on what was before it. That was her strategy. And she's bound by that strategy now. She can't pick that course of action in the district court and then come up on appeal and say she wants a trial. All right. So my second question for you has to do with the district court's proportionality analysis. The Supreme Court has given us some guidance in terms of issues to think about in figuring out proportionality for fines. And it's very specific about the use of the guidelines because the guidelines best reflect a person's culpability. Here, it seems to me that what the district court did is rather than figuring out the exposure under the guidelines, the district court looked at the exposure under the civil penalties. Isn't that problematic? No, I think they're both relevant. And there's a footnote in Bajikajian, I believe, that says that the statutory maximum is relevant evidence. And I think Oh, sure. It's certainly relevant. And you can look at it. But without some reference to the guidelines and the maximum exposure under the guidelines, which is substantially less, how do we know that it wouldn't have made a difference in this case to the district court? To the district court, was there any reference to the guidelines analysis, either in the government's papers or Ms. Bussell's papers? There's definitely a reference to it in our brief. And we did a guidelines calculation. I believe it was on pages 42 to 43 of our brief and footnote 8. The issue with the guidelines in this case is that this is solely a civil case. So the guidelines calculation is extremely hypothetical. It's much more like Bajikajian where there was a criminal offense. So we have to make assumptions as to what she would have been charged with. And then I believe that in our guidelines calculation, we said, and I think it was in that footnote, that she could face almost six years in prison and a maximum fine of $200,000. And we calculated that based on her criminal history and other I think, though, is that the statutory maximum is actually 10 years in prison and a $500,000 fine if the FBAR violation occurs while the party is also violating another law, for example, filing a false return. So, I mean, the main problem with Bussell's argument on the civil criminal comparison is that she completely ignores the very substantial term of imprisonment that would result from a criminal FBAR violation. And this court has made very clear that the term of imprisonment has to be considered. And that's in a case called United States versus $132,000 in U.S. currency and I believe United States versus MACB, both cases that we cited. And the other point to make is that this court has also made clear that there isn't a rigid set of factors to apply a flexible set of factors in different cases. For example, whether the fine is in the range Congress prescribed, the seriousness of the violation, whether the violation is related to other illegal activities, which it is in this case because she did not report the interest from the account on the return and she also did not disclose the existence of the account on her return because she did not file Schedule B, the harm caused by the violation, and another point is whether the party falls within the targeted group of the statute and Bussell clearly falls in the dead center of a class of persons targeted by the Bank Secrecy Act and that's Americans who seek to hide income or assets from the IRS by putting them in offshore bank accounts and I think that's actually a fundamental distinction between this case and Bajikasian where the Supreme Court emphasized that the defendant does not fit into the class of persons for whom the statute was principally designed. He is not a money launderer, a drug trafficker, or a tax evader. So the Bajikasian situation is I also wanted to point out on a different topic for a minute because the court inquired as to the tax treaty issue and I guess first thing I just want to correct an error that 2009 protocol has actually not been ratified. It's tied up in the Senate, but I'm shocked. Yeah, right, exactly. But even if it were, even if it had been ratified, the result would be the same. There's no complaining of, but the fundamental problem with her treaty argument is that she stipulated it away. Her treaty argument is an evidentiary argument. She's saying there's no admissible evidence to support the government's complaint, so the complaint should be dismissed and that's the argument she made in the district court. The problem with that is that she stipulated to the elements of the government's case in order to cut off discovery. So she can't stipulate not to argue against her willfulness, not to dispute the balance in the account, not to dispute her interest in the account, and at the same time say that the government complaint fails for lack of admissible evidence. She can't have it both ways. Does she have the right to pursue her affirmative defenses since she in effect confessed to everything the government needed in the complaint? Oh, she could have. She raised her affirmative defenses. She didn't, you know, stipulating to the elements of the government's claim didn't stipulate to her affirmative defenses necessarily, but the district court ruled on them. The district court considered them and, as you mentioned, did a very thorough ruling on the excessive fines matter. The district court didn't say she conceded those. It addressed them quite thoroughly. So did the district court err in not allowing further proffer, I guess, to further the initial proffer made or attempt to proffer in the motion for reconsideration? No, she didn't offer any evidence. And as a matter of fact, her strategy in this case was not to get into the evidence, was to keep discovery out of the case and to have the court rule on these matters as a matter of law. So, you know, as I said, she cut off discovery. She moved for judgment on the pleadings and she never told the district court, this is what I have to offer. In fact, and counsel reiterated on appeal, she said she doesn't have the evidence. So not only didn't she ask to put it in, she essentially says she doesn't have it. And I mean, there's no evidence in the record as to when the account, the best that we know, it looks like from the record, the government became aware of it when UBS produced certain documents in around 2009. So there's no evidence that the funds were legal or not, which again is not really relevant to the FBAR inquiry. And, you know, the district court ruled on what was before it and in our view did so correctly. My colleagues have any additional questions? I think we have no additional questions. Counsel, you've already used up your time. So there's really no rebuttal time. So we will. Nope. But we thank you for your argument. I think we've gone round and round with your argument and I don't think there's much more to say. But we thank you both for your argument. The case just argued is submitted.
judges: M. Smith, Murguia, Nguyen